INHABITANTS OF FAYETTE *versus* INHABITANTS OF HEBRON.

A person living on a plantation and having his home there at the time of its incorporation into a town, prior to the Massachusetts settlement act of 1793, c. 34, thereby acquired a settlement in such town.

ASSUMPSIT to recover compensation for the support of Eliza Bumpus, the wife of Seth Bumpus, and her children, whose settlement was alleged to be in Hebron. 'Their settlement was derived from Seth Bumpus, and the only question made was where his settlement was.

It did not appear that Seth Bumpus had gained any settlement in this State in his own right; and the plaintiffs claimed to recover by establishing the settlement of his father, John Bumpus, in Hebron ; and to do so, by showing that he was a resident in the plantation of Shepherdsfield at the time when it was incorporated as a town by the name of Hebron, March 6, 1792.   The defendants contended, that if he was dwelling there as his home at that time, he would not thereby gain a legal settlement, because there was then no statute providing that a settlement should be gained in that mode.   SHEPLEY J. presiding at the trial, instructed the jury that Bumpus would thereby gain a legal settlement, if so residing there.

The jury found, that John Bumpus was residing in Shepherdsfield when it was incorporated as the town of Hebron, in 1792.

If the instruction was erroneous, the verdict was to be set aside.

*Vose,* for the defendants, insisted that towns were liable for the support of paupers only by statute ; and that there was

no mode of acquiring a settlement, but by the provisions of some statute. *East Sudbury* v. *Sudbury*, 12 Pick. 5; *New Portland* v. *New Vineyard*, 4 Shepl. 71; *Thomaston* v. *Vinalhaven*, 1 Shepl. 161.

Prior to the statute of 1793, there was no provision in any of the statutes, that any one should gain a settlement by residing on the territory at the time it was incorporated as a town. He examined the statutes severally, and said that no such provision was to be found in any one of them.

If it be said, that the very act of incorporation gives such settlement, without any statute provisions on the subject, it is enough, that it would equally apply to districts and plantations; and it has been decided, that the incorporation of a district into a town will not. *Walpole* v. *Hopkinton*, 4 Pick. 357.

The only two cases in which a contrary view is intimated, were rightly decided on other grounds, and so much as had reference to this subject was extrajudicial. He examined the cases of *Bath* v. *Bowdoinham*, and *Buckfield* v. *Gorham*, and said they were justly liable to his preceding remark, and that this Court, in *Thomaston* v. *Vinalhaven*, already cited, had so viewed them.

The words, " *or otherwise,*" in the statute of 1793, do not imply that there were other modes of gaining a settlement than by statute; but merely enumerated some statute modes, and referred to other statute modes, by the term *or otherwise.*

*Emmons*, for the plaintiffs, said that the question to be decided between the parties was — can an individual, twenty-one years of age and a citizen of the United States, resident in an unincorporated territory at the time of its incorporation into a town, by the act of incorporation gain a settlement therein, so that the town shall become liable, if he subsequently becomes a pauper, prior to the law of 1794. The defendants affirm that he could not. The plaintiffs maintain that he could.

The settlement law, passed in 1794, repeals all prior settlement acts, but provides that all settlements already gained by force of said laws, *or otherwise*, shall remain until lost by gaining others. This shows, that it was then understood, that

---
Fayette *v.* Hebron.
---

there had been other modes of gaining settlements than by statute provisions. The settlement law of 1789, speaks of such as have obtained a legal settlement in such town or district, "by birth, marriage, *or otherwise.* The statutes anterior to the law of 1794, (which were examined,) do not speak of gaining a settlement by the incorporation of a town, and yet that must have been one of the modes.

Mere residence in an unincorporated place did not give a settlement. 2 Dane, c. 53, art. 3, § 17. If, therefore, persons residing in an unincorporated plantation did not by its incorporation into a town gain a settlement by the act, then at the time the plantation becomes a town, no inhabitant has a legal settlement therein. Unless by the act of incorporation, as the law then was, no person residing upon the territory, when the plantation of Shepherdsfield was incorporated into the town of Hebron, could gain a settlement therein within two years, excepting by vote of the town, voting each other in by turns. The act of incorporation, *ex proprio vigore*, gave a legal settlement to all persons residing on the territory at the time.

That prior to the settlement act of 1794, the incorporation of a plantation into a town gave a legal settlement in the town to all persons then residing therein, has been settled by a series of decisions in Massachusetts and Maine, from 1808 down to the present time. *Bath v. Bowdoinham,* 4 Mass. R. 452; *Buckfield v. Gorham,* 6 Mass. R. 445; 2 Dane, c. 53, art. 3, § 18; *St. George v. Deer Isle,* 3 Greenl. 390; *Bloomfield v. Skowhegan,* 16 Maine R. 58; *Marlboro v. Hebron,* 2 Conn. R. 22; *Westport v. Dartmouth,* 10 Mass. R. 341; *Great Barrington v. Lancaster,* 14 Mass. R. 256; *Windham v. Portland,* 4 Mass. R. 390; *Westboro' v. Franklin,* 15 Mass. R. 256; *Lancaster v. Sutton,* 16 Mass. R. 115; *Groton v. Shirley,* 7 Mass. R. 156; *Fitchburg v. Westminster,* 1 Pick. 146; *Shrewsbury v. Boylston,* ib. 106; *Walpole v. Hopkinton,* 4 Pick. 359; *Hallowell v. Gardiner,* 1 Greenl. 93; *Hallowell v. Bowdoinham,* ib. 129; *Dalton v. Hinsdale,* 6 Mass. R. 501; *Hamilton v. Ipswich,* 10 Mass. R. 506; *Newburyport v. Boothbay,* 9 Mass. R. 414.

The opinion of the Court was drawn up by

WHITMAN C. J. — This is a case arising under the settlement and pauper laws of this State. The question reserved, and elaborately argued, is whether a person living on a plantation, on its being incorporated into a town, in 1792, thereby acquired a settlement in such town. The instruction of the Judge, who presided at the trial, was in affirmance of this proposition ; and the jury thereupon returned their verdict for the plaintiffs.

The counsel for the defendants argued, that the liability of towns to support their poor, is wholly dependent upon legislative enactment ; and cites, in support of this proposition, the cases of *East Sudbury* v. *Sudbury*, 12 Pick. 5 ; *New Portland* v. *New Vineyard*, 16 Maine R. 71 ; and *Thomaston* v. *Vinalhaven*, 13 Maine R. 161. Mr. Chief Justice WESTON, in the latter case, in delivering the opinion of the Court in reference to the proposition first above stated, remarked, that " as the settlement of paupers depends upon the express provision of law, it might deserve very serious consideration whether a mode of settlement, so sweeping in its effect, should be established by construction," and that, " as no such provision existed in any former statute, this would seem to be a new mode of gaining a settlement." And suggests that the opinions, intimated by the Court, in *Bath* v. *Bowdoinham*, 4 Mass. R. 452 ; and *Buckfield* v. *Gorham*, 6 Mass. R. 445 ; were extrajudicial, and not necessarily connected with the decisions in those cases.

The counsel for the defendants further contends, inasmuch as it has been held in Massachusetts, that the settlement of those residing in districts, when incorporated into towns, was not altered ; so the settlement, before the statute of 1793, of the inhabitants of plantations, could not be altered by their being incorporated into towns. This argument depends upon the supposed similitude of districts to plantations. Districts, by the statutes of Massachusetts, in reference to legal settlements and paupers, were placed upon a par with towns. They

were but another species of municipal corporation, created by the legislature, with powers, in some respects, inferior to those of towns; but in reference to paupers and acquiring legal settlements, the powers and liabilities of the inhabitants of each were placed upon the same footing. Hence, when raised from the condition of districts to that of towns, no change was produced thereby in the rights of the poor, or in the obligation of the same corporators to relieve them, when in need. The pauper laws were never extended to the inhabitants of plantations. By being such inhabitants, no liability was thereby created to support or relieve any one who might fall into distress therein; and no settlement, of the kind under consideration, could ever be acquired by being such inhabitant.

In regard to the gaining a settlement, before 1793, by living in a plantation, at the time of its incorporation into a town, the cases cited on the part of the plaintiffs, seem to exhibit a series of juridical opinions, tending very strongly to the *support* of the ruling of the Court at the trial in this case. That the liability, on the part of towns to support their paupers, depends upon legislative enactment, is undeniable. No town could otherwise be bound to afford aid to any individual in distress. The statute creates the duty; and renders the *inhabitants* of every town liable to relieve all such as within their towns, may fall into distress, and stand in immediate need of relief. When such relief is afforded, it becomes a question, whether the expense shall, ultimately, fall upon the town affording it, or be reimbursed by some other town. To determine this, it must be ascertained where the individual relieved has his legal settlement. With a view to this, the legislatures of Massachusetts and Maine have, at different times, determined prospectively, by their enactments, what shall be requisite to constitute a legal settlement in any particular town. The legislature of this State, by an act of the twenty-first of March, 1821, referring to statutes before enacted, made provision, that "all settlements already gained by force of said laws *or otherwise,*" should remain until lost by gaining others.

The provision in the statute of Massachusetts, of 1794, is in the precise same language. From both these statutes therefore, it would seem to be clearly inferible, that modes of gaining settlements, other than those which had been before specified in any statute, had existed. If it were not so, the words, "or otherwise," would be without meaning. And the rule is, that all the words in a statute are to be considered as operative, if practicable.

The inhabitants of a plantation, who were under no obligation to relieve any of their number who might fall into distress; and who, of course, during such condition, could not claim any such relief; upon being incorporated into a town, became at once bound to afford such relief, whenever occasion might call for it. If such incorporation did not give to each corporator a legal settlement in his new town, it would follow, that, in every case of a pauper relieved, the inhabitants would have a remedy over against some other town for reimbursement; and this would continue to be the case until every inhabitant, who might become chargeable, had acquired a settlement therein, by some of the modes prescribed by statute; and this would be so, notwithstanding the inhabitants had enjoyed all the aids incident to a town from its inhabitants, in the mean time; and during which time they could not become liable to reimburse any expense incurred for the relief of any of their number, who might fall into distress in other towns. It would seem incredible, that the existence of such a state of things could ever have been contemplated as admissible by any legislative body, anterior to the passage of the statute of 1793. This renders it presumable, that, prior to the passage of that law, settlements must have been gained otherwise than by special enactments for the purpose; and that the incorporation of plantations *proprio vigore* accomplished that purpose.

Legal settlements in towns, by force of annexations thereto of parts of other towns, and the creation of one town out of a portion of another town, before the statute of 1793, have been repeatedly recognized as being thereby changed with the terri-

tory so annexed or erected into a new town. Judge Sewall, in delivering the opinion of the Court, in *Westport* v. *Dartmouth*, 10 Mass. R. 341, says, "upon that event (the incorporation of New Bedford, which took place in 1786 or 7) all persons, then having their legal settlement in Dartmouth, who actually dwelt and had their homes within the limits of the new town or district, gained, by force of the act of incorporation, a legal settlement in the new town or district." C. J. PARKER, in delivering the opinion of the Court in *Great Barrington* v. *Lancaster*, says "the pauper's original settlement was in Lancaster, that being his father's settlement at the time of his birth. On the annexation of that part of Lancaster, (in 1781) where the father dwelt, to Shrewsbury, his settlement was transferred to the latter town. For although no express provision, respecting paupers, appears in the act providing for their annexation, yet it is a necessary effect of such annexation, that the town, which acquires the new inhabitants and new territory, should also incur such burthens as may be incident to the new relations." And the same principle is distinctly recognized by Chief Justice PARSONS, in delivering the opinion of the Court, in *Windham* v. *Portland*, 4 Mass. R. 390 ; and again, in *Lancaster* v. *Sutton*, 16 Mass. R. 115; and by PARKER C. J. in *Westborough* v. *Franklin*, 15 Mass. R. 256 ; and in *Groton* v. *Shirley*, 7 Mass. R. 156 ; and in *Dalton* v. *Hinsdale*, 6 Mass. R. 501. A similar principle was adopted in *Mason* v. *Alexandria*, 3 N. H. R. 303.

The principle, that the incorporation of a plantation as a town, confers a legal settlement upon those, who, at the time, were settled upon it, seems but a corollary from the above cited decisions. And the direct avowal of it, in the two distinct instances, alluded to by Chief Justice WESTON, seems to add great weight of authority in favor of it. And it seems to have been referred to by Chief Justice MELLEN, in *Hallowell* v. *Gardiner*, 1 Greenl. 93, as being an acknowledged principle ; and the same may be said of the opinion delivered in *Westport* v. *Dartmouth*, before cited. Judge Sewall says, in that case, "an act to incorporate, as a new town or district,

a territory with the inhabitants thereon, which are separated and set off from one or more ancient towns or districts, operates, in this respect, like the original incorporation of a plantation." The case of *Thomaston* v. *Vinalhaven* seems to have been decided upon other grounds, so that the remarks of Chief Justice WESTON were but *obiter dicta;* and cannot be regarded as having a controlling influence ; and are unsupported by any prior authority or dictum. We think, therefore, on the whole, that we may well consider the rule, as laid down at the trial, in this case, as a well established principle.

*Judgment on the verdict.*